UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

JANE DOE,                              )
                                       )
                    Plaintiff,         )          Civil Action No.:   5:18-CV-1100 (BKS/TWD)
                                       )
        v.                             )
                                       )
                                       )          **JURY TRIAL DEMANDED**
SYRACUSE UNIVERSITY,                   )
                                       )
                                       )
                    Defendant.         )

**COMPLAINT**

Plaintiff, Jane Doe[1]  (hereinafter "Jane" or the "Plaintiff") for her Complaint against

Syracuse University (hereinafter the "Defendant University" or the "Defendant") relief, upon

information and belief, hereby states and alleges as follows:

**NATURE OF ACTION**

1.       This is an action for monetary damages and injunctive relief arising from the

Defendant's wrongful, improper and negligent expulsion of the Plaintiff. The Defendant's

arbitrary application of disciplinary procedures was made in violation of the Defendant

University's own rules and policies, hence its contractual obligations as written and implemented,

the Title IX of the Education Amendments of 1972 (20 U.S.C §1681-1688 [commonly known as

"Title IX"]), and regulation of 34 C.F.R. 106, New York Education Law §6444, and principles of

---

[11] Plaintiff refers to herself as "Jane Doe" and to her ex-boyfriend as "Student X" throughout the Complaint.

1

good faith, fair dealing, due process and fundamental fairness. The Defendant University's said expulsion was also commission of negligence, assault and defamation against Plaintiff.

## THE PARTIES

2.     Plaintiff is an individual, who was a student at Syracuse University, rightfully scheduled to graduate in May 2016, whose current permanent domicile is in the Republic of Korea, commonly known as South Korea.

3.     Defendant Syracuse University is a private university located in Syracuse, New York.

4.     Upon information and belief, the University operates under a state charter that places the institution under a Board of Trustees, the defendant Trustee of Syracuse University. The Board of Trustees is entrusted to select the Chancellor, oversee all faculty and senior administrative appointments, monitor the budget, supervise the endowment and protect Syracuse University.

5.     At all times material hereto, Syracuse University acted by and through agents, servants, employees, and representatives who were acting in the course and scope of their respective agency or employment and/or in the promotion of Syracuse's business, mission, and/or affairs.

6.     Upon information and belief, the Defendant University is a recipient of federal funding and it is not allowed to discriminate on the basis of sex or gender under Title IX of the Education Amendments of 1972, 20 U.S.C. §1681- 1688.

7.     During the time relevant to this case, Plaintiff was a full-time student of the integrated undergraduate and graduate program under which she majored in undergraduate Fine Arts and graduate Computer Science at the Defendant University.

2

## JURISDICTION AND VENUE

8.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §1331 as Plaintiff's federal claim is established through Title IX of Education Act of Amendments of 1972, 20 U.S.C § 1681, et seq. and Civil Rights afforded by 42 U.S.C. §1983.

9.     The Court has original subject matter jurisdiction over the claims in this Complaint pursuant to 28 U.S.C. §1332 as the parties are completely diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs. The parties' domiciles are as follows:

a.     Plaintiff, Jane Doe, has a permanent domicile in the Republic of Korea.

b.     Upon information and belief, Defendant Syracuse University, is a New York State chartered educational corporation. *See* N.Y.L. 1887, Ch. 414.

10.     The court has supplemental subject matter jurisdiction over those claims pursuant to 28 U.S.C § 1367, because Plaintiff's state law claims are interrelated with Plaintiff's federal claims and arise from a common nucleus of operative facts such that the adjudication of Plaintiff's state law claims with Plaintiff's federal claims furthers the interest of judicial economy.

11.     Venue lies in this District pursuant to 28 U.S.C. §1391(b)(1) and 28 U.S.C. §1391(b)(2) since the Defendant resides in this judicial district and the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

12.     On or about September 15, 2015, Defendant wrongfully made a decision to immediately expel Plaintiff from the University with the wrongful accusation of violation of the Code of Student Conduct. On or about September 22, 2015, Plaintiff submitted an appeal and the Defendant's Appeal Board denied the Plaintiff's appeal and expelled her effective October 8, 2015.

On February 18, 2015, Plaintiff submitted a further appeal. On or about March 11, 2016, the Defendant issued a letter confirming its earlier wrongful decision.

13.     Defendant's wrongful decision of expulsion of Plaintiff was based on the University's unfair investigation. It started with the Defendant's arbitrary and ill-grounded accusation of Plaintiff in the faculty's complaint filed on or about May 26, 2015.

14.     By the faculty's May 26 Complaint, the Defendant failed to provide fair and proper procedure and willfully ignored to investigate the Plaintiff's sexual assault claims reported by Plaintiff to the University Counseling Center on or about May 5, 2015, and issued her ex-boyfriend, Student X's Temporary order of no-contact order on or about May 12, 2015 even though the Defendant had the knowledge of the existence of Plaintiff's prior sexual assault claims reported through University Counseling Center on or about May 5, 2015.

15.     One of the Defendant's school police officers also failed to provide fair investigation and proper due process in delivering the Temporary order of no-contact order by threatening Plaintiff to sign the temporary order of no-contact order without explaining the contents and defamed and mischaracterized Plaintiff as the person who instigated the trouble.

16.     As a foreign student, Plaintiff made extensive efforts to resolve these issues by cooperating with the Defendant's investigation, though one-sided and unfair, and appealing the Defendant's expulsion. However, Plaintiff's efforts were made useless because Defendant's original fact findings was impartially distorted in favor of the school faculty members, other students, school employees and Student X.

17.     In addition to the Defendant's unfair and arbitrary decision, Defendant sent a final appeal response with wrongfully mischaracterizing Plaintiff as a troublesome student on the letter made March 11, 2016.

18.     Defendant's mischaracterizing of Plaintiff has the trouble maker defamed Plaintiff because it did not have any proper ground. Defendant did not properly investigate the faculty members and other students in the School of Design.

19.     In the sexual assault claim, Defendant completely and willfully ignored the Plaintiff's report on Student X's sexual assault.

20.     On March 15, 2016, Plaintiff filed a complaint with the United States Department of Education for the Defendant's wrongful investigation of the Plaintiff's sexual assault claim and its unfair expulsion of Plaintiff.  At present, Plaintiff is waiting for the investigation outcome from United States Department of Education on the matter of Defendant's violation of the Title IX of the Education Amendments of 1972 (Title IX) , as amended  20 U.S.C. § 1681 et. Seq.

21.     Defendant's expulsion of Plaintiff does not have any proper grounds. It has ruined the Plaintiff's academic and professional career in the area of data science and her life has been devasted as a result.


### May 26, 2015 Faculty's Complaint

### University Faculty's Accusation of Plaintiff's Emails to Outside Organization is Improper Infringement of Plaintiff's Right to Free Speech and Plaintiff's Claim for Her Intellectual Property Rights

22.     The School of Visual and Performing Arts in Syracuse University has the mission to expand students to connect to the community based on student's research and collaboration with staff, faculty and student and improve professional area.

23.     Plaintiff as a full time student of the integrated program of undergraduate courses and graduate courses fully complied with Defendant Faculty's mission by participating in projects

to improve the University's library system and redesign the delivery system for the local Meals on Wheels.

24.     In one of her classes named IND 375 Human Factors for Designers taught by Professor Jonathan Mills, Plaintiff presented her own creative idea of stress relief wrap as described in a Plaintiff's published book in 2012.

25.     Plaintiff became aware that another student of the Defendant's Faculty received an award from a competition sponsored by the Industrial Designers Society of America ("IDSA") by copying the Plaintiff's design concept used in the stress relief wrap without the Plaintiff's consent, which was presented in Plaintiff's course of curriculum.

26.     Plaintiff had no prior knowledge that this student would use her design concept for an outside competition or was not even informed the classroom presentation was a forum to share her ideas with other students in the same program.

27.     As the original owner of the design concept, Plaintiff tried to get the advice from other professors and intellectual property experts regarding the other person's use of her original design concept.

28.     Defendant's School of Information Studies and Visual and Performing Arts precariously encourages collaboration between students, and student and faculties. It does not have a safety procedure to prevent students from using the other student's ideas when ideas are obtained from the other student's presentation.

29.     Moreover, when one student's idea is used by others, the Defendant has no system of giving recognition to the original idea's presenter. The Defendant University's academic integrity office was not capable of investigating the ownership of intellectual property rights vested in such industrial design as the one claimed by the Plaintiff.

30.     Plaintiff raised her concern with the host organization of competition, the Industrial Designers Society of America (hereinafter the "Industrial Designers Society of America" or the "IDSA")  regarding alleged misuse of her design concept by another student from her school.

31.     When the IDSA sent the Plaintiff's concern directly to the Defendant University in the spring of 2015, the Plaintiff was assured by another professor that her concern would be properly addressed.

32.     When the Defendant's faculty found out the Plaintiff's inquiry with the IDSA, it launched an investigation by asking the faculty members about their opinions regarding Defendant's other student's plagiarism but concluded the investigation without even reviewing the Plaintiff's design concept or interviewing the Plaintiff independent of the faculty members' opinions.

33.     Defendant improperly concluded that Plaintiff made a false report of other student's academic dishonesty, based on a perfunctory, one-sided investigation. The Defendant failed to make proper and sincere investigation of why the Plaintiff raised a plagiarism issue and whether the Plaintiff's claiming that other students used her design concept was part of the school curriculum or not. Moreover, the Defendant did not even bother investigate the other alleged infringer student. The Defendant's conduct was simply partial and unfair to the Plaintiff from beginning to end.

34.     Defendant did not even have any meaningful meetings with Plaintiff to discuss the Plaintiff's concern and merely asserted Plaintiff's accusation of other students and faculty members in the school of design was wrong.  As a student, the Plaintiff firmly believed Defendant's faculty member taught that the original idea belonged to the creator of the ideas.  To

this date the faculty members never concluded definitively that Plaintiff was not the original owner of design concept or the alleged infringer was the owner of her own idea. Never!

35.     As internal professors who have vested interest in the general operation of the faculty, Defendant's faculty professors were not the proper, independent investigators to evaluate Plaintiff's plagiarism claim.

36.     Without proper, independent investigation, Defendant accused Plaintiff of breaching peace and mischaracterized her as having destructive behavior, academic dishonesty, disorderly conduct, violation of the regulations of the Defendant.

37.     Even though Plaintiff believes she was the victim of another student's academic dishonesty or disorderly conduct of using Plaintiff's idea for the outside competition, Defendant ironically accused plaintiff of the violation of the conduct by filing a complaint letter against the Plaintiff on May 26, 2015.

38.     In sum, the Defendant willfully ignored the crucial part of investigation, that is, appointing a panel of independent investigators and conducting an impartial and fair investigation of whether other students in the faculty misused or copied the Plaintiff's design concept in response to the Plaintiff report.


**NO-CONTACT ORDER**

**The University Sanction is Neither Justified nor Proper Without Considering Plaintiff's Right to Have Fair and Impartial Investigation**

39.     On or about May 5, 2015, as a separate matter from the foregoing academic integrity issue, Plaintiff reported a sexual assault to a staff counselor at the Syracuse University Counsel Center.

40.     On or about May 7, 2015, Plaintiff had a meeting with Ms. Carrie Brown in person at the Defendant's counseling center. Plaintiff was informed by Ms. Carrie Brown that Plaintiff should file a complaint about her ex-boyfriend, Student X's Title IX violation and apply for a No-Contact Order against him at the Defendant University's Department of Public Safety, (hereinafter the "Department of Public Safety" or the "DPS").

41.     Although the Plaintiff was not planning to file for a non-contact order against Student X, somehow Student X, a student enrolled in the Defendant University's law school filed for his own application ahead of the Plaintiff, using his knowledge of law and law enforcement, in retaliation against the Plaintiff.

42.     On or about May 12, 2015, Defendant issued a temporary order of No-Contact Order against Plaintiff in favor of Student X.  Plaintiff was served with the Student X's Temporary Order of No-Contact Order by Defendant's police officer, Michael Patsos. When served, Plaintiff was threatened to sign on the Non-Contact Order without having enough time to read or explaining what type of documents.

43.     Defendant's violation of immediate enforcement of Title IX left Plaintiff as the respondent and wrongfully concluded in the Defendant's fact-finding that Plaintiff was the aggressor and should be expelled in the letter of Defendant's decision dated September 15, 2015.

44.     On or about May 26, 2015, Defendant received a formal complaint from Student X for stalking when Plaintiff had a valid reason to retrieve the Plaintiff's car regardless of ex-boyfriend's existence.

45.     Defendant did not conduct a full investigation as a basis for the temporary order of No-Contact Order at the request of Student X's request.

46.     However, Defendant rejected Plaintiff's request on cross-No Contact Order against her ex-boyfriend, Student X, without no acceptable reason against a recommendation by the school therapist Ms. Carrie Brown.

47.     One again, the Defendant discriminated Plaintiff by not issuing the cross no-contact order as requested by Plaintiff whereas Defendant immediately issued Student X's no-contact order against Plaintiff. In fact, all the way up to the expulsion decision of September 15, 2015 and the appeal decision of March 11, 2016, the Defendant completely and willfully ignored the Plaintiff's please for safety concern and help. The decision and the later day's orders by the Defendant do not even mention the fact the Plaintiff contacted the school counseling center on May 5, 2015 and her subsequent request for help.

48.     The formal complaint for stalking filed by the Plaintiff's ex-boyfriend, Student X was not based on any rationally conceivable grounds. All that the Plaintiff wished was the retrieval of her car from Student X's landlord's garage. It was peacefully done without any attempt to contact her ex-boyfriend.  Plaintiff tried to avoid Student X in the course of her retrieval of her own car. She had no other reason of whatsoever.

49.     Defendant nonetheless accepted the formal complaint against the Plaintiff for stalking based on Student X's ill-grounded belief that the Plaintiff used her retrieval of her car as an opportunity to contact Student X even though the Plaintiff did not even know Student X's whereabouts at the time of retrieval of her own car.

50.      Plaintiff's retrieval attempt was made in a peaceful manner with one of the Plaintiff's friends.

51.     Plaintiff properly filed for a cross no-contact order because Student X abruptly and unexpectedly appeared several times on the campus and in her apartment late at night.

52.     However, the Defendant willfully ignored Plaintiff's claim and did not include in its fact-finding the Plaintiff's application for a cross no-Contact Order that was necessary and warranted to protect the Plaintiff immediately from Student X's unexpected approach.

53.     Defendant turned out to be wrong. The concurrent claims adjudicated by the Family Court resulted in mutual contact orders against both parties.

## SEXUAL ASSAULT CLAIM FILED BY PLAINTIFF
### University's Policy to Investigate Sexual Harassment and Sexual Assault Is Prejudiced

54.     On or about May 26, 2015, Student X filed a harassment complaint in retaliation against the Plaintiff with Defendant's title IX officer and it was accepted by the Defendant without any reasons.

55.     However, on or about May 5, 2015, before Student X filed his harassment complaint, Plaintiff reported that Student X sexually assaulted the Plaintiff to Ms. Carrie Brown, a school therapist at Defendant's counseling Center, which was a week before Student X requested no-contact order against Plaintiff.

56.     Plaintiff did not initially want to file a complaint against her ex-boyfriend because a sexual assault claim against him would affect his future career.  With heavy heart, Plaintiff informed sexual assault to the Syracuse Police on or about May 11, 2015.

57.     On or about June 25, 2015, the Plaintiff filed a complaint again with Defendant's Title IX officer, Sheila Johnson-Willis, that her ex-boyfriend had sexually assaulted her, in addition to her report to the Defendant University's counseling center on May 5, 2015.

58.     Defendant failed to investigate by reviewing Plaintiff's allegations that Student X sexually assaulted Plaintiff.  However, in any report of investigation or fact-finding lists drafted by Defendant, Plaintiff's reports or claims were not considered or, in fact, not even mentioned.

59.     Defendant's continuous ignorance of Plaintiff's sexual assault report and application for a cross no-contact order led to a conclusion that it was the Plaintiff who violated Code of Student Conduct for violation of University Policy regarding Syracuse University Policy on Sexual Assault, Gender Related Harassment, Stalking or Relationship violence. It was an outrageous discrimination against the Plaintiff.

60.     As a separate claim, Student X filed to for a protection order in Family Court on July 22, 2015.

61.     On or about July 23, 2015, the Plaintiff filed for her own cross petition to protect herself from Student X.

62.     The Family Court head a hearing and reviewed the applications filed by both parties decided that it was fair to issue a protection order to both parties. So in the eye of justice, there was no one-sided dealing with the claims made by both parties.

63.     Despite the fact the Family Court issued a mutual protective order based on the text message evidence, the Defendant University did not refer to any of the Plaintiff's claims and did not even take them into consideration when it decided the expulsion of the Plaintiff from the Defendant University.

64.     Defendant's investigator, Ms. Johnson-Willis interviewed Student X regarding his allegation against the Plaintiff and drafted an investigation report based on Student X's complaint against Plaintiff only.

65.     Moreover, the Defendant did not investigate whether Student X violated the Code of Student Conduct by sexually assaulting the Plaintiff.

66.     On or about June 22, 2015, Plaintiff received the Defendant's first wrongful decision to place the Plaintiff on suspension in the academic period, based on Plaintiff's report to the IDSA and at the same time and all the prejudicial claims raised by Student X.

67.     On or about June 26, 2015, Defendant adopted the School Police Officer's personal opinion that Plaintiff had a pattern of misbehavior in the past, which was not proved in any of the proceedings.

68.     With Michael Patsos's ill-grounded opinion, Defendant's police office closed the case of Plaintiff's claim of sexual assault against Student X without providing a justifiable reason. Moreover, the police officer insulted Plaintiff by saying that her lack of English proficiency caused misunderstanding of "consent" during a consented sexual intercourse.

69.     On or about October 8, 2015, Defendant again ignored Plaintiff's allegations of Student X's sexual assault when it finalized the University's Conduct Board's decision and denied Plaintiff's appeal.

70.     Defendant's failure to provide proper investigation that requires to describe facts surrounding claims is violation of its own policy set forth by Student Conduct System Handbook.

71.     Moreover, according to Student Conduct System Handbook, the Defendant University was required to designate 3 (three) faculty/staff/administrators as a Review Board to confirm all decisions were reached on the merits of the case involving non-consensual sexual assault claims. The Defendant made a decision solely on a personal and prejudicial opinion of one of its school police officers.

### PLAINTIFF'S RIGHT TO HAVE FAIR PRE-HEARING MEETING WAS VIOLATED BY THE DEFENDANT UNIVERSITY

72.     Defendant did not provide Plaintiff with a required pre-hearing meeting to review pre-hearing meeting process.

73.     Plaintiff was never properly informed of a pre-hearing meeting to review the hearing process, whereas Defendant's School handbook states that before the University Conduct Board hearing, "both the complainant and respondent will be invited to participate in an individual pre-hearing meeting in the Office of Student Rights and Responsibilities to review the hearing process according to Student School Handbook.

74.     Plaintiff had to testify herself in the pre-hearing meeting without knowing her rights and obligation in the Pre-hearing meeting process because Plaintiff's advisor, Chris Burke of Student Legal Services, was not there at that time Plaintiff testified.

**COUNT I**
**BREACH OF CONTRACT**

75.     Plaintiff repeats and reallege the allegations set forth in paragraph "1" through "74" with the same force and effect as if fully set forth herein.

76.     Plaintiff was accepted for the integrated program of undergraduate and graduate courses by the Defendant University and obtained a bachelors' degree in Fine Arts on May 10, 2015. When the University decided the expulsion of the Plaintiff, she was enrolled as a graduate student for a Master's Degree in Computer Science, which, upon completion, would lead to the Plaintiff's obtaining of a Master's degree in a year.

77.     Upon the acceptance of Plaintiff as a student at the Defendant University, and her continued enrollment thereat, the Defendant University formed a contract with Plaintiff.  The terms of the contract provided that in return for Plaintiff continued payment of tuition, charges, and fees,

14

along with Plaintiff's completing the said program courses and Defendant's duty to keep the safe and educational process in the school.

78.     The contract between Plaintiff and the Defendant University requires the Defendant University to treat plaintiff in good faith and to refrain from acting in any manner which is arbitrary and capricious related to the administration of its rules, regulation, or judicial system. Specifically, the University agreed that it would substantially comply with its own policies, procedures, and guidelines before taking any action that would negatively harm Plaintiff.

79.     The University states the Code of Student Conduct (the "Code") is expected to support the educational of the mission of the institution.

80.     The University's policy and Code constitutes the terms of the contract between Plaintiff and Defendant to keep them in a contractual relationship.

81.     Defendant's decision on sanction of expulsion is recommended on Student Handbook. The Application of Standard Sanctioning Guidelines is as follows:

- Supplying alcohol to underage students;
- Driving while intoxicated or under the influence of drugs;
- Extreme drug intoxication or abuse-related behavior posing a substantial risk to the health and well-being of others; and
- Physical assault that does not result in physical injury

82.      Defendant's reasons to decide on sanction of expulsion listed on the sanction letter dated September 15, 2015 sent from the Office of Student Rights and Responsibilities are listed as follows:

- Ms. Cho went to the home of her ex-boyfriend to retrieve her property from his landlord's garage on the same day that Mr. Lewis caused a Temporary Order of No-Contact to be placed against her. She came with a female friend and actively tried to avoid coming into contact with Mr. Lewis.
- Ms. Cho contacted third parties associated with her ex-boyfriend while a Temporary Order of No-Contact was in place.

- Ms. Cho failed to provide all of her text messages with Mr. Lewis, which the University Conduct Board requested for the first time at her hearing. Ms. Cho had a related legal proceeding pending and wanted to consult with her attorney prior to providing the messages.
- The University Conduct Board believed that Ms. Cho damages her ex-boyfriend's vehicle, although there is no evidence that of other than his bare assertion.
- And the University Conduct Board determined that Ms. Cho's allegation of sexual assault against Mr. Lewis was in retaliation for his request for a Temporary Order of No-Contact against her, which the University issued on May 12, 2015. However, Ms. Cho reported the sexual assault to a Staff Therapist at the Syracuse University Counseling Center on May 5, 2015, and to a Syracuse Police office on May 11, 2015.

83.     In communicating with the University Conduct Board in the letter dated September 15, 2015, the Defendant stated that during the first informal meeting the Plaintiff had previously taken responsibility for violating the Code of Student Conduct in a separate matter that Plaintiff raised her concerns regarding other student's plagiarism.

84.     However, the Defendant has not fully investigated Plaintiff's claim that other students copied Plaintiff's ideas and used Plaintiff's ideas for the IDSA's competition. Instead, the University forced Plaintiff to accept the responsibility for raising [the] issue after being told there was no basis for her claims in the Informal Resolution Meeting held on or about May 27, 2015.

85.     Defendant's arbitrary final decision on September 15, 2015 directed Plaintiff to be expelled from the Defendant University immediately, which means that Plaintiff is permanently separated from Defendant-owned, operated, or controlled property and from enrollment in any course or program offered by the Defendant University.

86.     Defendant did not consider Plaintiff's response to ex-boyfriend's no-contact order and listed ex-boyfriend's complaint as the only fact-finding.

87.     Defendant regarded Plaintiff as a person tending to make troubles in the University without valid grounds. Plaintiff's claim against other students and faculty members in the design

16

department was not investigated and the Defendant concluded Plaintiff wrongfully accused other students and faculty members. Plaintiff was mischaracterized as a trouble maker only with the reason plaintiff raised a concern extending to the outside organization, the IDSA.

88.    Defendant has not taken any steps to ensure that Plaintiff would be permitted to continue Plaintiff's academic studies or finish the school year.

89.    Accordingly, the actions undertaken by Defendant as set forth in the foregoing constitute a breach of contract with Plaintiff, resulting in an arbitrary cancellation of Plaintiff's right to register for her academic courses and depriving the Plaintiff of her ability to obtain her graduate degree.

90.    Defendant's decision to expel the Plaintiff without cause has resulted in permanent, irreparable injury to the Plaintiff because she will not be able to recover the loss of time that should have been dedicated for to complete the graduate program in the Defendant University.

91.    Plaintiff suffered great hardship not being able to complete the graduate course that was connected with Plaintiff's undergraduate study. She spent 4 years in the University and had one year left to complete the graduate coursework.

<u>COUNT II</u>
<u>BREACH OF CONTRACT FOR VIOLATING IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING</u>

92.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "91" with the same force and effect as if fully set forth herein.

93.    Implicit in the afore mentioned contract between Plaintiff and the University is a covenant of good faith and fair dealings clause, which establishes that the University had, and continues to have, a duty to fairly, justly, and impartially adjudicate this matter and follow the policies and procedures set forth in the Defendant University's system. Moreover, the good faith

and fair dealings clause establishes that Plaintiff has a right to continue her study for the rest of academic courses that have been continuous from the undergraduate study.

94.     On or about May 5, 2015, Defendant ignored and failed to respond promptly and equitably to the Plaintiff's report of her ex-boyfriend's sexual assault.

95.     On or about May 12, 2015, Defendant's school police officer Michael Pastos issued a no contact order in favor of her ex-boyfriend Student X against Plaintiff without investigating the details of assault which was initially caused by the ex-boyfriend.

96.     Moreover, Defendant treated Plaintiff's further claim of sexual assault as Plaintiff's retaliation against her ex-boyfriend for his claim for stalking.

97.     The hearing on the issue of the Plaintiff's sexual assault claim against Student X was not conducted fairly. Even though Plaintiff reported such claim before her ex-boyfriend's claim for stalking, Defendant downplayed all of the Plaintiff's claims as retaliation of Student X's complaint.

98.     The report made by Police Office Elizabeth Helterline of Syracuse Police Department stated the facts based on Michael Patsos' narrative opinion without any objective investigation or reviewing other reports.

99.     The Plaintiff and Student X formed a close personal and intimate relationship in the spring of 2015. During the better times of their relationship, the Plaintiff became acquainted with Student X's friends and pastor in church. However, Defendant did not view these persons whom the Plaintiff came to know through Student X as total strangers to the Plaintiff.

100.     Defendant did not investigate Plaintiff's sexual assault claim nor Plaintiff's plagiarism claim whereas Defendant immediately accepted Plaintiff's ex-boyfriend's no-contact

order application and Plaintiff's school faculty's complaint regarding Plaintiff's report of other student's plagiarism.

101.    Instead, Defendant has misguidedly punished Plaintiff on a misconception that Plaintiff was responsible for harassment, misbehavior, academic dishonesty, disorderly conduct, violation of any federal, state or local law and violation of University Policies.

102.    As to the separate plagiarism, Plaintiff internally raised the issue that other students used Plaintiff's design concept that was presented in the course of curriculum and she merely wanted to discuss the issue with the professor in the design department. However, Defendant's faculty did not clearly explain why other students did not infringe Plaintiff's own intellectual property rights even though faculty members admitted that the original idea belonged to the Plaintiff.

103.    On or about April 29, 2015, Plaintiff contacted the IDSA to raise her concern that another student in the design department of the same university might have used Plaintiff's same idea plan without her consent.

104.    Right after Plaintiff contacted to the IDSA, Defendant initiated a disciplinary proceeding against Plaintiff and threatened to expel Plaintiff if Plaintiff did not admit that Plaintiff's activity to raise the plagiarism violated the University's Code of Conduct. Without having other alternative choice, Plaintiff had to accept sanction to hold Plaintiff on academic probation, placed on or about June 22, 2015. She was given no clear explanation, nor any fair opportunity to present her concern to an independent panel of reviewers.

105.    As part of the probation conditions, Defendant directed Plaintiff to submit a 6-page research paper in accordance with the University's Academic Integrity Report. Plaintiff complied.

106.    According to the Defendant's University Policy, Defendant has the responsibility to handle cases objectively.

107.    However, Defendant punished the Plaintiff only because she raised a concern regarding other students' use of Plaintiff's idea. Defendant did not take any action regarding the other student in response to the Plaintiff's concern.

108.    Accordingly, Defendant has breached the implied covenant of good faith and fair dealing. Defendant not only failed to provide Plaintiff with the fair adjudicative process as outlined in the System and Policy but also purposefully impeded Plaintiff's ability to continue her academic success.

109.    As a direct, proximate and foreseeable consequence of Defendant's aforementioned conduct, Plaintiff's academic and career prospects, earning potential and reputation have been severely harmed. She has sustained enormous damages including but not limited to emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages.

**COUNT III**
**PLAINTIFF'S CONTRACTUALLY PROTECTED FIRST AMENDMENT RIGHTS**

110.    Plaintiff repeats and reallege the allegations set forth in paragraphs "1" through "109" with the same force and effect as if fully set forth herein.

111.    As stated in the foregoing, Defendant placed Plaintiff on disciplinary probation as of June 22, 2015.

112.    On the disciplinary letter on  or about June 22, 2015, Defendant's misguided punishment against Plaintiff is based on the following reasons:

> You admitted in our meeting that on or about April 29, 2015, you accused other students of stealing your academic design plans. These claims were investigated by faculty and administrators within the College of Visual and Performing Arts and found to be unsubstantiated. Additionally, claims of academic design theft were investigated by the Syracuse University Academic Integrity Office and "no evidence of Plagiarism in the sharing of ideas and concepts" was found to have occurred.

113.    Defendant's reasoning is troublesome to begin with. It mistakenly and arbitrarily determined that sharing of ideas and concepts in school was not the evidence of plagiarism.

114.    Defendant punished Plaintiff just for the reason that Plaintiff accused other students of violating student's conduct of dishonesty in an academic course.  Defendant ignored Plaintiff's emails to professors that Plaintiff provided the evidence and raised the issues regarding other student's plagiarism.

115.    A student has the right to express themselves freely on any subject as long as it does not violate code of student conduct. It is called speech, expression and press freedom.

116.    For outside competition or in class, if a student sees other students used his or her ideas for their presentation or competition, the student who has the doubt about other student's dishonesty then has the right to express his or her concern about the others academic integrity.

117.    There is no indication the Defendant's communication with the Plaintiff was mutual. One foreign student against a university was not a fair game to begin with. The faculty of University and Defendant created atmosphere where Plaintiff was driven to accept defendant University's systematic discrimination against her.

118.    To the Defendant University, the Plaintiff was just a student from another country. Without an independent third party's objective investigation, the Defendant University concluded that the victim was at fault because Plaintiff accused the other student's misbehavior and dishonesty.

119.     According to Syracuse University Student Code II. A, all members of the university community strongly encouraged to report all suspected violations of the policy to address suspected student academic dishonesty.

120.     As a design school's student, Plaintiff raised other student's suspicious activity. The Defendant University's punishment of the Plaintiff was not only a violation of the Defendant university own Student Code II but also serious violation of the Plaintiff's right to freedom of speech guaranteed by the First Amendment.

121.     Defendant also wrongfully asserted that Plaintiff harassed other students and faculty or staff members because Plaintiff   raised the other student's dishonesty.

122.     Such misinterpreted and arbitrary punishment is a blatant violation of Plaintiff's contractual rights to exercise her free speech as defined by the Constitution.

123.     As a direct, proximate, and foreseeable consequence of Defendant's aforementioned conduct, Plaintiff's academic and career prospects, earning potential and reputation have been severely harmed. She has sustained enormous damages including but not limited to emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages.


**COUNT IV**
**NEGLIGENCE**


124.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "123" with the same force and effect as if fully set forth herein.

125.    Defendant owes duties of care to Plaintiff. Such duties include, without limitation, a duty of reasonable care in investigating and adjudicating the charges against her.

126.    Further, Defendant owes duties of care to Plaintiff to protect her from defamation, harassment, assault, battery by Defendant's own employees.

127.    Employers are responsible for the tortious acts of their employees.

128.    At all times material hereto, Defendant had a duty to hire competent personnel, adequately train its personnel, adequately supervise its personnel, and terminate and/or sanction personal for substandard performance.

129.    Defendant owed a duty of care to Plaintiff to ensure that its policies and procedures, without limitation, written and implemented, were fair and reasonable.

130.    Defendant breached these duties of care owed to Plaintiff as followings:

a.   Failing to hire well-trained agents and employees;

b.   Failing to train its employees, agents or representatives in the proper method to thoroughly investigate and adjudicate, without bias, reports of sexual misconduct;

c.   Failing to properly train its employees, agents, or representatives in basic due process as it pertains to the investigation, adjudication, and appeal from adjudication of complaints of sexual misconduct;

d.   Failing to supervise its employees, agents, or representatives to ensure complaints of sexual misconduct are adequately investigated and fairly adjudicated; and

e.  Failing to maintain proper policies and procedures designed to fairly, reasonably, and adequately adjudicate claims of sexual misconduct without bias or favor.

131.  Defendant breached its duties of care owed to Plaintiff.

132.  As a direct, proximate, and foreseeable consequence of Defendant's aforementioned conduct, Plaintiff's academic and career prospects, earning potential and reputation have been severely harmed. She has sustained enormous damages including but not limited to emotional an psychological damages, damages to reputation, past and future economic losses, loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages.

## COUNT V
## VIOLATION OF FUNDAMENTAL FAIRNESS

133.  Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "132" with the same force and effect as if fully set forth herein.

134.  Defendant owed a duty to Plaintiff to provide her with a process that was fundamentally fair to her as University's student.

135.  Defendant failed to provide a fair process by:

f.  Conducting the case of sexual assault issues biased towards a male student;

g.  Process of hearing and Defendant's fact finding is based towards a male student, ex-boyfriend's statement only;

h.  Proceeding with decision-making without adequate evidence and proceeding with an investigation and adjudication initiated by an employee against a student in violation of the University's own policies;

i.  Treating Plaintiff in a highly disparate manner;

24

j.  Acting with deliberate difference towards Plaintiff's report that she had been harassed and assaulted;

k.  Misinterpreting Plaintiff's understanding of Student School Handbook rule as the violation of plagiarism;

l.  Arbitrarily concluding Plaintiff wrongfully reported other student's plagiarism even though Plaintiff provided full evidences of emails and work products;

m.  Arbitrarily and capriciously applying policies against Plaintiff for sanction; for example, the university's faculty did not investigate nor hear about other student's work products and issued faculty's complaint with the reason of reporting other student's plagiarism to IDSA;

n.  Failing to promptly respond to and to impartially investigate Plaintiff's Title IX report made on or about May 5, 2015 which is required to respond timely and treated Plaintiff's further complaints as retaliation against ex-boyfriend's no-contact order.

o.  Arbitrary and capriciously applying policies against Plaintiff for investigation; for example, the University's investigation report was composed only based on School Police officer, Michael Patsos's personal opinion without proving the opinion is true.

p.  Failing to follow a written procedure of providing a pre-hearing meeting for the review process.

q.  Failing to follow a fair process to have the right to have legal advisor in the meeting; for example, Chris Burke of Student Legal Services attended the

meeting but was not staying for giving the legal advice with the excuse of other commitments.

136.    Plaintiff's efforts to solve the issue of plagiarism was ignored by the University and had no choice but to directly report to the hosting competition organization, the IDSA, about the participant's plagiarism.

137.    Defendant's arbitrary and capricious sanction to plaintiff on or about June 22, 2015 and the subsequent expulsion of the Plaintiff resulted in substantial injury to Plaintiff.

138.    As a direct, proximate, and foreseeable consequence of Defendant's aforementioned conduct, Plaintiff's academic and career prospects, earning potential and reputation have been severely harmed. She has sustained enormous damages including but not limited to emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages.

## COUNT VI
## VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDEMNT RIGHTS PURSUANT TO 42 U.S.C. §1983

139.    Plaintiff repeats and realllege the allegations set forth in paragraphs "1" through "138" with the same force and effect as if fully set forth herein.

140.    The University charged Plaintiff with violating the following Code Provision: harassment, academic dishonesty including but not limited to plagiarism and cheating and other forms of academic misconduct.

141.    The University further charged for the violation of the University's Academic Integrity Policy, Section II.C.2- Communication- making a false report of academic dishonesty.

142.    As explained in the foregoing, Defendant did not investigate the student who allegedly used Plaintiff's ideas for his or her presentation and outside competition sponsored by the IDSA and concluded that Plaintiff wrongfully accused other students of plagiarism.

143.    The University's faculty filed a complaint and imposed punishment on Plaintiff, that is, disciplinary probation on June 22, 2015 based on Defendant faculty's complaint.

144.    The probation procedure that Defendant forced Plaintiff to agree to accept her understanding of the misconduct as set forth by the University's Academic Integrity Policy and sign the sanction based on her forced understanding.

145.    Defendant also ignored Plaintiff's report stating that Student X sexually assaulted her, which was made to a staff therapist at the Syracuse University Counseling Center on or about May 5, 2015. This report was made one week before her ex-boyfriend, Student X, filed a complaint for stalking and requested a non-contact order against her in retaliation, using his superior legal knowledge.

146.    Defendant's final expulsion effective as of October 8, 2015 was decided based on the one-sided statement from her ex-boyfriend seeking no-contact order without reviewing Plaintiff's sexual assault claim against her ex-boyfriend and created a new punishment without reviewing the original subject matter of suspension of plagiarism issues

147.    The immediate expulsion thus violates Plaintiff's due process rights as enshrined by the Fourth Amendment. Indeed, in the course of its investigation and during any of the hearings held by the Defendant, none of the Plaintiff's original suspension matter of plagiarism was discussed.

148.    Upon information and belief, and at all relevant times, Defendant's arbitrary decision and impartial investigation violated New York Education Law §6444 which requires the

University to enact policies and procedures promoting "a prompt response to any complaint and to have the complaint investigated and adjudicated in an impartial, timely, and through manner by individuals who receive annual training in conducing investigations of sexual violence, the effects of trauma, impartiality, the rights of the respondent, including the right to a presumption that the respondent is "not responsible" until a finding of responsibility is made pursuant to the provisions of this article and the institution's policies and procedures, and other issues including, but not limited to domestic violence, dating violence, stalking or sexual assault."

149.    The Defendant's ignorance of the Plaintiff's report of sexual assault to a staff therapist at the Syracuse University Counsel Center was nowhere to be addressed or heard during any of the hearings. The Plaintiff's counsel appointed by the Defendant was not even present throughout the expulsion hearing. Moreover, Defendant's employee, Syracuse University Police officer, Michael Patsos, insulted Plaintiff by treating her as the responsible person. Upon information and belief, Mr. Pastos was notorious for his overly aggressive and commandeering behavior towards international students like the Plaintiff.

150.    Furthermore, the Plaintiff was denied her right to procedural due process. It was not clear whether she was fully informed of her right to independent legal counsel of her choice even though the school Handbook Rule states that before the University Conduct Board hearing, "both the complainant and respondent will be invited to participate in an individual pre-hearing meeting in the Office of Students Rights and Responsibilities to review the hearing process."

151.    Additionally, Defendants' decision on Plaintiff's expulsion does not follow Defendant's own guideline on the punishment. According to Student School Handbook, expulsion is the most severe disciplinary action that the University Student Conduct system can impose. The detailed standard of violence and harassment does not apply to the person who filed for the sexual

harassment or the person who reported the doubt about other student's use of Plaintiff's design plan.

152.    Therefore, the Defendant University's enactment and execution of the aforementioned policy indicates the Defendant University was acting under the color of a State statute. The Defendant University's conduct is attributable to the State, because the State, upon information and belief, encouraged the University's disciplinary action taken against Plaintiff regardless of its apprpriateness.

153.    As a direct, proximate, and foreseeable consequence of Defendant's aforementioned conduct, Plaintiff's academic and career prospects, earning potential and reputation have been severely harmed. She has sustained enormous damages including but not limited to emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages.

## COUNT VII
## INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

154.    Plaintiff repeats and realege the allegations set forth in paragraphs "1" through "153" with the same force and effect as if fully set forth herein.

155.    Defendant committed numerous violations of Plaintiff's contract and of federal and state laws.

156.    Plaintiff's education and future have been severely affected and she has suffered extensive damages due to the Defendant's actions and inactions. Without appropriate redress, the potentially unfair outcome of the investigation, i.e. immediate expulsion, will continue to cause

Plaintiff damages by way of missed educational opportunities and career opportunities, as well as damage to her reputation and continued emotional distress.

157.   Based upon Defendant's failure to conduct a fair and impartial investigation and adjudication, Plaintiff requires that Defendant to take all appropriate actions to correct any and all statements that was composed by one party's statement from her ex-boyfriend, Student X, and school police officers that Plaintiff tried to retaliate against her ex-boyfriend's no contact order. Plaintiff further requires that any and all disciplinary records concerning Plaintiff be expunged from University records.

158.   Plaintiff requests that this Court order the University to allow Plaintiff to earn her degree.

159.   Plaintiff further requests that this Court declares that Defendant's rules and policies and actions, as applied herein, were unconstitutional or in violation of the contractual equivalent of due process, i.e. good faith and fair dealing and fundamental fairness.

## COUNT VIII
## PUNITIVE DAMAGES

160.   Plaintiff repeats and reallege the allegations set forth in paragraphs "1" through "159" with the same force and effect as if fully set forth herein.

161.   Defendant's aforementioned acts demonstrate a reckless, willful, depraved and wanton indifference to and disregard for Plaintiff's rights to the due process and freedom of speech.

162.   Defendant's grossly negligent, harmful, and wanton acts deprives Plaintiff of her opportunity to pursue further academic and career plans.

163.   Consequently, an award of punitive is warranted and required in order to uphold and vindicate Plaintiff's rights.

30

164.   By reason of foregoing, Plaintiff seeks judgment against Defendant for compensatory and punitive damages in an amount that exceeds the jurisdictional limits of all lower courts, together with interest, disbursements, costs and fees, in addition to attorneys' fees, to the fullest extent permitted by law.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant on all counts of this complaint. Plaintiff further requests that this Court:

A.   Issue an Injunction and Declaratory Judgment as herein requested.

B.   Retain jurisdiction of this matter for the purpose of enforcing this Court's order.

C.   Enter a finding that Defendant intentionally discriminated against Plaintiff in violation of Title IX with erroneous outcome, improper procedure, selective enforcement, and deliberate indifference.

D.   Enter a finding that Defendant engaged in discrimination with malice and reckless disregard to Plaintiff's federally protected rights under Title IX; disciplined Plaintiff in violation of the University's rules and policies, hence its contractual obligations as written and implemented; and due to gross and numerous violations of its disciplinary procedures, its contractual obligations, and its duties of care, engaged in s process that was inherently flawed and fundamentally unfair.

E.   Order the University to expunge Plaintiff's disciplinary records from University records her good standing to third parties.

F.   Order the University to allow Plaintiff to complete the rest of her graduate program.

G.   Award Plaintiff compensatory damages in an amount to be determined at trial

H.   Award Plaintiff punitive damages in an amount to be determined at trial

I.      Allow a trial in this matter and enter a judgment for Plaintiff on each count of this complaint, awarding her damages in an amount to be determined at trial; as well as the reasonable pre- and post-judgment interest, including attorney's fees, costs and expenses, in accordance with accordance with 42 U.S.C. §1988 or pursuant to any other statute or common law doctrine providing for such award.

J.      Grant such other and further relief as this Court deems equitable and just under the circumstances.


## JURY DEMAND

PLAINTIFF hereby makes demand for this case to be tried by a jury insofar as the claims herein are triable.

Date: September 13, 2018

Respectfully Submitted,


Park Legal Counsel Group, PLLC
By: /s/ Joon H. Park
Joon H. Park (NDNY 700423)
140 Broadway, New York, NY 10005
T: 212-858-7580
F: 917-720-9820

*Attorneys for Plaintiff*