**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JANE DOE,

                                        Plaintiff,                          5:18-cv-1100 (BKS/TWD)

v.

SYRACUSE UNIVERSITY,

                                        Defendant.

---

**Appearances:**

*Plaintiff, pro se:*
Jane Doe
Seoul, South Korea

*For Defendant:*
Edward G. Melvin
Barclay Damon LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, NY 13202

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

    Plaintiff Jane Doe,[1] currently proceeding pro se, brings this Section 1983 and diversity

action alleging various claims against Defendant Syracuse University relating to her expulsion

from the University in 2015. (*See generally* Dkt. No. 1). Presently before the Court is

Defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure

12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil

---

[1] Pursuant to a Court-ordered stipulated protective order, Plaintiff Jane Doe and the individual identified in the
complaint as "Student X" may proceed using pseudonyms. (Dkt. No. 11).

Procedure 56. (Dkt. No. 10). Plaintiff opposed the motion, and Defendant has replied. (Dkt. Nos. 54, 57). For the following reasons, Defendant's motion is granted in part and denied in part.

## II.    FACTS[2]

### A.    Plaintiff's Allegations of Plagiarism & Resulting Probation

In the spring of 2015, Plaintiff, who is from South Korea, was enrolled as a full-time student at Syracuse University in an "integrated undergraduate and graduate program." (Dkt. No. 1, ¶ 7). Plaintiff graduated in May 2015 with an undergraduate degree in Fine Arts and was scheduled to graduate in May 2016 with a graduate degree in Computer Science. (*Id.* ¶¶ 2, 7, 76).

While enrolled in a "Human Factors for Designers" course in the College of Visual and Performing Arts, Plaintiff "presented her own creative idea of [a] stress relief wrap." (*Id.* ¶ 24). Plaintiff alleges that she later "became aware that another student" received an award at a competition sponsored by the Industrial Designers Society of America ("IDSA") by "copying the Plaintiff's design concept used in the stress relief wrap without the Plaintiff's consent." (*Id.* ¶ 25). Plaintiff alleges that she sought advice from professors and "intellectual property experts regarding the other person's use of her original design concept." (*Id.* ¶ 27). Plaintiff alleges that the School of Information Studies and College of Visual and Performing Arts "encourage[] collaboration" but do not have a "safety procedure to prevent students from using" other students' ideas. (*Id.* ¶ 28). Plaintiff therefore "raised her concern" that another student may have used her design concept with the IDSA directly on April 29, 2015; the IDSA referred Plaintiff's concern to the University. (*Id.* ¶¶ 30–31, 103).

---

[2] The facts are drawn from (1) Plaintiff's complaint, (2) Plaintiff's opposition to Defendant's motion, to the extent the submission is "consistent with the allegations in the complaint," *see Crum v. Dodrill*, 562 F. Supp. 2d 366, 373–74 & n.13 (N.D.N.Y. 2008), and (3) the extra-pleading materials the Court has concluded it may consider in deciding the present motion, *see infra* Section IV.A. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

University faculty "launched an investigation," speaking with faculty members but not reviewing Plaintiff's design concept or interviewing Plaintiff. (*Id.* ¶ 32). Plaintiff generally alleges that the University's investigation was not "proper" or "independent." (*Id.* ¶¶ 33–36). On May 26, 2015, Plaintiff was informed that University faculty had filed a complaint against her for making false reports of academic dishonesty. (*Id.* ¶¶ 36–37).

On June 22, 2015, Plaintiff attended an "Informal Resolution Meeting" with Eric Nestor, Associate Director of the Office of Student Rights and Responsibilities to discuss the charges against her. (*Id.* ¶¶ 66, 84, 104; *see generally* Dkt. No. 10-9). Plaintiff alleges that Defendant "threatened to expel" her if she did not admit that her actions violated the Code of Conduct, forcing her to accept the sanction of "academic probation." (*Id.* ¶ 104). In a letter confirming the outcome of the meeting, Mr. Nestor stated that Plaintiff consulted with her "Procedural Advisor" prior to resolving her case but "chose not to include" the advisor in the meeting. (Dkt. No. 10-9, at 2). Plaintiff accepted responsibility for the charges of harassment, academic dishonesty, disorderly conduct, and violation of University policies, rules, or regulations. (*Id.*). Plaintiff and Mr. Nestor agreed that Plaintiff was not responsible for the charges of conduct "which threatens the mental health, physical health, or safety" of others and violation of any federal, state, or local law. (*Id.*). The letter further explained:

> [Y]ou admitted in our meeting that on or about April 29, 2015, you accused other students of stealing your academic design plans. These claims were investigated by faculty and administrators within the College of Visual and Performing Arts and found to be unsubstantiated. Additionally, claims of academic design theft were investigated by the Syracuse University Academic Integrity Office and "no evidence of plagiarism in the sharing of ideas and concepts" was found to have occurred. . . . [Y]ou indicated your understanding of how accusing students of academic dishonesty was a violation of the University's Academic Integrity Policy, Section II.C.2 – Communication – Making a false report of academic dishonesty. You also indicated understanding that reporting such accusations

> verbally and in writing have the potential to injure the reputation of
> the accused. Finally, you indicated an understanding that continuing
> to communicate with faculty and staff regarding issues that have
> been resolved is harassing behavior.

(*Id.* at 3; *see also* Dkt. No. 1, ¶ 112 (quoting the same in part)). Plaintiff and Mr. Nestor agreed

that Plaintiff would be "placed on a status of disciplinary probation through April 29, 2016."

(Dkt. No. 10-9, at 3).

### B.      Relationship with Student X & Resulting Expulsion

In the spring of 2015, Plaintiff entered into a "close personal and intimate" relationship

with Student X, a third-year student at the University's law school. (Dkt. No. 1, ¶ 99). Plaintiff

alleges that, on May 5, 2015, she reported that Student X had sexually assaulted her to staff

counselor Carrie Brown at Defendant's Counseling Center. (*Id.* ¶¶ 14, 39–40, 55). Plaintiff

alleges that Ms. Brown suggested that Plaintiff file a Title IX complaint against Student X and

apply for a "No-Contact Order" against him at the University's Department of Public Safety. (*Id.*

¶ 40). Plaintiff alleges that she did not plan to apply for a No-Contact Order. (*Id.* ¶ 41). However,

she "informed" "Syracuse Police" of the sexual assault on or about May 11, 2015. (*Id.* ¶ 56).[3]

On May 12, 2015, Defendant "issued a temporary" No-Contact Order against Plaintiff to

Student X. (*Id.* ¶ 42; *see also id.* ¶¶ 14–15). Defendant's Police Officer Michael Patsos served

the order on Plaintiff, allegedly threatening Plaintiff to sign the order "without having enough

time to read [it] or explaining" the document to her. (*Id.* ¶ 42). Plaintiff alleges that at some point

she "properly filed for a cross no-contact order because Student X abruptly and unexpectedly

appeared several times on the campus and in her apartment late at night," but Defendant

"rejected" her request and "ignored" her "pleas[] for safety concern and help." (*Id.* ¶¶ 46–51).

---

[3] In her opposition, Plaintiff states that during the May 5 meeting, Ms. Brown "reported to the DPS and Title IX office." (Dkt. No. 54, at 8).

On May 26, 2015, Student X filed a Title IX complaint against Plaintiff for stalking and harassment. (*Id.* ¶¶ 44, 54). Plaintiff alleges that the basis for Student X's complaint was that Plaintiff went to "retrieve" her car from "Student X's landlord's garage." (*Id.* ¶¶ 44, 48–50). Plaintiff "peacefully" retrieved her car "without any attempt to contact her ex-boyfriend" and "did not even know Student X's whereabouts at the time of retrieval." (*Id.* ¶¶ 48–49).

On or about June 25, 2015, Plaintiff filed a Title IX complaint against Student X with Sheila Johnson-Willis, Defendant's Title IX officer. (*Id.* ¶ 57). Plaintiff alleges that Defendant "failed to investigate" Plaintiff's allegation of sexual assault. (*Id.* ¶¶ 58, 65, 70). Plaintiff alleges that Ms. Johnson-Willis interviewed Student X and drafted "an investigation report based on Student X's complaint against Plaintiff only." (*Id.* ¶ 64). Plaintiff alleges that Defendant "adopted" Officer Patsos's opinion that Plaintiff "had a pattern of misbehavior in the past" and "closed" her complaint of sexual assault against Student X. (*Id.* ¶¶ 67–68). She further alleges that Defendant's "failure to provide [a] proper investigation that . . . describes facts surrounding claims" violated the policy set forth by the "Student Conduct System Handbook." (*Id.* ¶ 70).

On July 22, 2015, Student X filed for an order of protection against Plaintiff in Family Court. (*Id.* ¶ 60). The next day, Plaintiff filed a cross-petition for an order of protection. (*Id.* ¶ 61). The Family Court issued orders of protection "to both parties." (*Id.* ¶ 62).

A hearing on Student X's complaint against Plaintiff was held before the University Conduct Board on September 10, 2015. (*See* Dkt. No. 10-17). Plaintiff alleges that Defendant did not provide her with "a required pre-hearing meeting" to review the hearing process, as required by the Handbook. (Dkt. No. 1, ¶¶ 72–74). The Conduct Board found that Plaintiff was responsible for violating five sections of the Code of Student Conduct. (Dkt. No. 10-17, at 2). The Conduct Board found that "beginning on or about May 4, 2015, you harassed, stalked, and

threatened a Syracuse University student. The Board also determined that you falsified

information during the investigation and adjudication of these charges." (*Id.*; *see* Dkt. No. 10-18,

at 4–6 (Conduct Board hearing opinion detailing the Board's findings of fact); *see also* Dkt. No.

1, ¶ 82 (summarizing "Defendant's reasons to decide on sanction of expulsion")). Although

Plaintiff alleges that Defendant noted that Plaintiff "had previously taken responsibility for

violating the Code of Student Conduct in a separate matter," (Dkt. No. 1, ¶ 83), the Conduct

Board's opinion states that the Board "did not consider" the "academic integrity case . . .

between the Respondent and the College of Visual and Performing Arts as relevant to this case,"

(Dkt. No. 10-18, at 6). The Conduct Board recommended a sanction of expulsion, citing

Plaintiff's "pattern of continuous and escalating behavior of misrepresentation, manipulation,

harassment, and the threatening of others." (*Id.* at 7). By letter dated September 15, 2015,

Plaintiff was expelled from the University "effective immediately." (Dkt. No. 10-17, at 3; *see*

*also* Dkt. No. 1, ¶ 12).

Plaintiff appealed the Conduct Board's decision on September 22, 2015. (Dkt. No. 1,

¶ 12). On October 8, the University Appeals Board denied her appeal. (*Id.* ¶¶ 12, 69). Plaintiff

alleges that she submitted a "further appeal" on February 18, 2016, which was denied on March

11, 2016. (*Id.* ¶ 12). Plaintiff alleges that her expulsion from the University has "ruined [her]

academic and professional career in the area of data science and her life has been devastated as a

result." (*Id.* ¶ 21).

## III.   STANDARD OF REVIEW

Defendant has moved to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) for

failure to state a claim or, in the alternative, for summary judgment pursuant to Rule 56.

Although Plaintiff received notice of the consequences of failing to respond to a summary

judgment motion, (Dkt. No. 47), and submitted exhibits of her own in her response to

Defendant's motion, (Dkt. No. 54), the Court finds that it would be premature in this case, where there has been no discovery, to treat the motion as one for summary judgment, and thus only considers Defendant's motion as one to dismiss under Rule 12(b)(6). *See Burnett v. Trinity Inst. Homer Perkins Ctr., Inc.*, No. 10-cv-681, 2011 WL 281023, at *1 n.3, 2011 U.S. Dist. LEXIS 6872, at *1 n.3 (N.D.N.Y. Jan. 25, 2011).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id*. (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Furthermore, the Court notes that, while Plaintiff is presently proceeding pro se, the complaint was drafted and submitted by her former counsel. While a complaint that has been filed pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests," *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)), "no extra tolerance is appropriate" where a submission "was drafted and submitted by a lawyer," *Hayes v. Dep't of Educ. of the City of N.Y.*, 20 F. Supp. 3d 438, 446 (S.D.N.Y. 2014) (citing *Thomas v. N.Y. City Dep't of Educ.*, 938 F. Supp. 2d 314, 331 (E.D.N.Y. 2013)). Because Plaintiff filed her opposition to Defendant's

motion pro se, the Court will construe her opposition liberally and with special solicitude. *Cf. id.* ("[A]s Plaintiff now represents herself in this action, her opposition to Defendant's motion to dismiss does warrant the broad latitude afforded *pro se* submissions."); *see also West v. Harkness*, No. 17-cv-621, 2021 WL 5321958, at *5, 2021 U.S. Dist. LEXIS 220735, at *12–13 (N.D.N.Y. Nov. 16, 2021) ("[T]he duty to extra liberally construe a complaint or motion paper is coextensive with whether the filing party was proceeding *pro se* at the time of filing.") (collecting cases).[4]

## IV.   DISCUSSION

Plaintiff asserts eight claims against Defendant: (1) breach of contract, (2) breach of contract for violating the implied duty of good faith and fair dealing, (3) violation of Plaintiff's "contractually protected First Amendment rights," (4) negligence, (5) violation of fundamental fairness, (6) violation of Plaintiff's Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, (7) injunctive and declaratory relief, and (8) punitive damages. (Dkt. No. 1, ¶¶ 75–164 (Counts I–VIII)).[5] Defendant moves to dismiss the complaint in its entirety.

### A.    Documents to Consider in Deciding Motion to Dismiss

Defendant attaches several documents in support of its motion. (*See* Dkt. Nos. 10-4 through 10-22). Plaintiff also attaches five documents to her opposition. (*See* Dkt. Nos. 54-1

---

[4] In recognition of the fact that Plaintiff filed her opposition to Defendant's motion pro se, the Court finds, contrary to Defendant's argument (Dkt. No. 57, at 6–8), that Plaintiff's untimely submission does not warrant dismissal of her complaint. Plaintiff is, however, warned that the Court will not overlook any further violations of the filing deadlines.

[5] Although Plaintiff's complaint also references Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. ("Title IX"), (*see* Dkt. No. 1, ¶¶ 1, 8, 43), neither the complaint nor Plaintiff's opposition to Defendant's motion plausibly alleges gender discrimination or that gender bias was a motivating factor in the outcome or the penalty in violation of Title IX. As set forth below, the Court finds that, although it was not enumerated as a cause of action, the complaint sufficiently informed Defendant of a claim of deliberate indifference to harassment under Title IX and plausibly alleges such a claim. *See Quinones v. City of Binghamton*, 997 F.3d 461, 469 (2d Cir. 2021) (holding that the district court should have addressed a claim which was not specifically enumerated in the complaint where the complaint "sufficiently informed Defendants of the factual basis for" the claim) (internal quotation marks and brackets omitted).

through 54-5). Thus, as a preliminary matter the Court must decide which of these documents, if any, to consider in resolving the motion to dismiss.

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted)). Even where a document is integral to the complaint, it must be "clear" that "no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Id.* at 231. "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Id.* (quoting Fed. R. Civ. P. 12(d)).

The Court will consider the "Syracuse University Student Conduct System Handbook 2014–2015" (the "Handbook") attached to Defendant's motion to dismiss. (Dkt. No. 10-5). Plaintiff refers to the Handbook and its provisions in her complaint and acknowledges that the Handbook, including the Code of Student Conduct, constitutes the "terms of the contract between Plaintiff and Defendant." (Dkt. No. 1, ¶ 80; *see also id.* ¶¶ 70, 71, 73, 79–80). Thus, the

Court finds that the Handbook is both incorporated by reference in and integral to the complaint. Further, in her opposition, Plaintiff does not challenge the authenticity of the Handbook filed with Defendant's motion.

The Court will also consider the June 22, 2015 letter from Mr. Nastor memorializing the outcome of the Informal Resolution Meeting which led to Plaintiff's disciplinary probation period. (Dkt. No. 10-9). Plaintiff references this letter in her complaint and quotes a significant portion of it. (*See* Dkt. No. 1, ¶¶ 66, 105, 112). Thus, the Court finds that the June 22 letter is incorporated by reference in the complaint. Further, Plaintiff does not challenge the authenticity of the letter filed with Defendant's motion to dismiss.

Finally, the Court will consider the September 15, 2015 letter to Plaintiff confirming the outcome of the Conduct Board hearing and notifying Plaintiff of her expulsion, as well as the Conduct Board Hearing Opinion. (Dkt. Nos. 10-17, 10-18). Plaintiff references both of these documents in her complaint and summarizes the factual findings contained in the Hearing Opinion. (*See* Dkt. No. 1, ¶¶ 82–83). Plaintiff does not challenge the authenticity of these documents and attaches the same documents to her opposition to Defendant's motion. (Dkt. No. 54-2). Accordingly, the Court will consider these documents as incorporated by reference in the complaint.

The Court will not consider the remainder of the documents submitted with Defendant's motion to dismiss or Plaintiff's opposition, as they are not incorporated by reference in or integral to Plaintiff's complaint. The Court therefore disregards these materials in lieu of converting Defendant's motion into one for summary judgment. *Nicosia*, 834 F.3d at 231.

## B.    Breach of Contract

Plaintiff alleges breach of contract under New York law. (Dkt. No. 1, ¶¶ 75–91 (Count I)). Defendant argues that Plaintiff's breach of contract claim must be dismissed because the

paragraphs in the complaint constituting the cause of action "fail[] to identify any specific promises or obligations that were breached" by the University. (Dkt. No. 10-1, at 20). Reading Plaintiff's complaint "generously," Defendant identifies three allegations that might underpin Plaintiff's breach of contract claim and argues that the documentary evidence shows that Defendant did not breach any of its obligations. (*Id.* at 20–22).

To survive a motion to dismiss for a breach of contract claim under New York law, the complaint must allege facts which show: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Habitzreuther v. Cornell Univ.*, No. 14-cv-1229, 2015 WL 5023719, at *5, 2015 U.S. Dist. LEXIS 112209, at *13–14 (N.D.N.Y. Aug. 25, 2015) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)).

Under New York law, "an implied contract is formed when a university accepts a student for enrollment: if the student complies with the terms prescribed by the university and completes the required courses, the university must award [her] a degree." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) (citing *Carr v. St. John's Univ.*, 17 A.D.2d 632, 633 (2d Dep't), *aff'd*, 12 N.Y.2d 802 (1962)). The terms of the implied contract are "contained in the university's bulletins, circulars and regulations made available to the student." *Id.* (quoting *Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 654 (2d Dep't 1987)). "Implicit in the contract is the requirement that the institution 'act in good faith in its dealing with its students.'" *Id.* (quoting *Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 413–14 (1980)). At the same time, "the student must fulfill [her] end of the bargain by satisfying the university's academic requirements and complying with its procedures." *Id.* (quoting *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998)). To "state a claim for breach of such a contract,

a student must identify 'specifically designated and discrete promises.'" *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016) (quoting *Ward v. New York Univ.*, No. 99-cv-8733, 2000 WL 1448641, at *4, 2000 U.S. Dist. LEXIS 14067, at *11 (S.D.N.Y. Sept. 28, 2000)). "'General policy statements' and 'broad and unspecified procedures and guidelines' will not suffice." *Id.* (quoting *Ward*, 2000 WL 1448641, at *4, 2000 U.S. Dist. LEXIS 14067, at *10); *see also Gally*, 22 F. Supp. 2d at 207 ("[G]eneral promises about ethical standards" that are "subject to neither quantification nor objective evaluation" "are far different from the types of specific promises which have led to valid breach of contract claims against universities.").

### 1.     Failure to Investigate Plaintiff's Complaint

Plaintiff alleges that Defendant "did not investigate whether Student X violated the Code of Student Conduct by sexually assaulting the Plaintiff." (Dkt. No. 1, ¶ 65; *see also id.* ¶¶ 58 (alleging that Defendant "failed to investigate by reviewing Plaintiff's allegations"), 70 (alleging "failure to provide proper investigation")). Relying on extraneous documents that the Court does not consider, Defendant argues that the University in fact investigated Plaintiff's complaint of sexual assault. (Dkt. No. 10-1, at 20–21).

The Court nonetheless finds that Plaintiff has not plausibly stated a breach of contract claim for failure to investigate her complaint because she fails to allege a specific contractual promise that could be the basis of a viable breach of contract claim. *Nungesser*, 169 F. Supp. 3d at 370. Section 10.4 of the Handbook provides, as part of the "Overview of the Conduct Process for Cases Involving Sexual Assault, Stalking, Gender-Related Harassment and Domestic/Relationship Violence," that upon receipt of a complaint the "Title IX Coordinator will designate an investigator who *may* conduct an investigation." (Dkt. No. 10-5, at 21 (emphasis added)). By the plain language of this provision, the Handbook does not entitle Plaintiff to an investigation and therefore Plaintiff has not stated a plausible breach of contract claim based on a

failure to investigate her complaint of sexual assault. *Cf. Feibleman v. Trs. of Columbia Univ. in the City of N.Y.*, No. 19-cv-4327, 2020 WL 3871075, at *2, 2020 U.S. Dist. LEXIS 120835, at *3–5 (S.D.N.Y. July 9, 2020) (finding that the plaintiff "failed to identify the express promise that would support a breach of contract claim" where the relevant provisions of the university's Gender-Based Misconduct Policy "reserve[d] significant discretion in making the threshold determination [whether to investigate] to Columbia" and the university was "not obligated to initiate an investigation in response to every complaint").

### 2. Notice of Pre-Hearing Meeting

Section 10.6 of the Handbook provides, as part of the "Overview of the Conduct Process for Cases Involving Sexual Assault, Stalking, Gender-Related Harassment and Domestic/Relationship Violence," that "[b]oth the complainant and respondent will be invited to participate in an individual pre-hearing meeting in the Office of Student Rights and Responsibilities to review the hearing process, but neither the complainant nor the respondent are required to attend." (Dkt. No. 10-5, at 21). Plaintiff alleges that "Defendant did not provide Plaintiff with a required pre-hearing meeting to review [the] pre-hearing meeting process" and that she was "never properly informed of a pre-hearing meeting." (Dkt. No. 1, ¶¶ 72–74; *see also* Dkt. No. 54, at 11 (arguing in opposition that she "never received the invitation and did not have such a meeting")). Plaintiff alleges that she had to testify "without knowing her rights and obligation." (Dkt. No. 1, ¶ 74).

Defendant argues that Plaintiff cannot maintain a breach of contract claim premised on the alleged failure to provide notice of a pre-hearing meeting because the documentary evidence it submitted "undisputed[ly]" shows that the University did in fact advise Plaintiff "of her opportunity to participate in a pre-hearing meeting." (Dkt. No. 10-1, at 21; *see also* Dkt. No. 57, at 9–11). However, as the Court is not considering the relevant documentary evidence, the Court

finds that Plaintiff has plausibly alleged that Defendant breached the provision of the Handbook requiring it to invite Plaintiff to a pre-hearing meeting. Plaintiff's breach of contract claim may proceed on this basis.

### 3.     Designation of a Review Board

Plaintiff alleges that Defendant was "required to designate" a "Review Board to confirm all decisions [that] were reached on the merits" of cases involving nonconsensual sexual assault claims but failed to do so. (Dkt. No. 1, ¶ 71). In opposition, Plaintiff also argues that Defendant "failed to appoint a Review Board to review the decision to expel Plaintiff." (Dkt. No. 54, at 8, 10).

Section 12.10 of the Handbook provides: "In cases involving nonconsensual sexual activity or a felony arrest, the Chancellor will designate three (3) faculty/staff/administrators to act as a Review Board to confirm all decisions reached [by the University Appeals Board] on the merits of the case." (Dkt. No. 10-5, at 29). This is in contrast to cases not involving nonconsensual sexual activity or felony arrest, where "[d]ecisions of the University Appeals Board . . . will be final when reviewed and confirmed by the Senior Vice President and Dean of Student Affairs or a designee." (*Id.*). Viewing the factual allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has not plausibly alleged that the University breached this provision of the Handbook. Plaintiff's complaint alleges that Defendant failed to appoint a Review Board to review the outcome of her complaint of sexual assault against Student X. (Dkt. No. 1, ¶ 71). However, Plaintiff does not allege that the University Appeals Board ever reached the merits of her complaint, and therefore Defendant's obligation to designate a Review Board under Section 12.10 was not triggered.

To the extent Plaintiff alleges in her opposition that Defendant failed to appoint a Review Board to review the Appeals Board's decision affirming her expulsion as a result of Student X's

complaint, that complaint did not involve allegations of nonconsensual sexual activity.

Therefore, the plain language of Section 12.10 did not require Defendant to designate a Review

Board to review the Appeals Board's decision. (Dkt. No. 10-5, at 29). Plaintiff therefore has not

plausibly alleged that Defendant breached a contractual obligation owed to Plaintiff.

*Habitzreuther*, 2015 WL 5023719, at *5, 2015 U.S. Dist. LEXIS 112209, at *13–14.

Accordingly, Defendant's motion to dismiss Plaintiff's breach of contract claim is

granted as to the failure to designate a Review Board.

### 4.      Failure to Resolve Plaintiff's Complaint

In her opposition, Plaintiff argues that, after investigators reviewed her allegation of

sexual assault against Student X, her claim was "amalgamated" with Student X's claim, but then

her "claim essentially disappeared." (Dkt. No. 54, at 8; *see id.* at 9 ("It's not clear where

Plaintiff's claim went from there.")). Plaintiff argues that under Defendant's policies

investigators "cannot decide the merits of sexual assault claims" and are required to provide a

report containing the facts learned during the investigation. (*Id.* at 8–9). In reply, Defendant

argues that Plaintiff's complaint does not allege any facts in this regard and that the Court should

disregard the facts asserted for the first time in Plaintiff's opposition. (Dkt. No. 57, at 11–12).

In deference to Plaintiff's pro se status, the Court will consider allegations in Plaintiff's

opposition to the extent they are consistent with the allegations in the complaint. *See Crum*, 562

F. Supp. 2d at 373–74 & n.13. Moreover, Plaintiff's complaint alleges that Defendant failed to

provide an investigation in accordance with "its own policy," which "requires [it] to describe

facts surrounding claims;" that "Defendant's police office closed the case;" and that the investigator's report only considered Student X's complaint. (Dkt. No. 1, ¶¶ 64, 68, 70).[6]

Section 10.7 of the Handbook provides: "The investigator will provide the alleged Code of Student Conduct violations, the written report, and the [complainant's and respondent's] written responses to a three-member University Conduct Board." (Dkt. No. 10-5, at 21). After describing what the investigator's report must include, Section 10.7 continues: "The report will not include any conclusions regarding responsibility for violations of the Code of Student Conduct." (*Id.* at 21–22). Under Section 10.8, "the Board will determine whether it is more likely than not that the respondent violated the Code of Student Conduct." (*Id.* at 22). And, under Section 10.10, "[t]he process of investigation and the Board's decision will be concluded within 60 days of the original complaint, pending special circumstances." (*Id.*). Here, Plaintiff has alleged that Defendant failed to adjudicate her claim and it is "not clear" how her complaint for sexual assault was resolved. (Dkt. No. 54, at 8–9; *see also* Dkt. No. 1, ¶¶ 58 (alleging that Plaintiff's "reports or claims were not considered"), 63 (alleging that Defendant "did not refer to any of the Plaintiff's claims and did not even take them into consideration when it decided the expulsion of the Plaintiff"), 69 (alleging that Defendant "ignored Plaintiff's allegations")). The Court therefore finds that Plaintiff has plausibly alleged that her Title IX complaint was not resolved in accord with Sections 10.7, 10.8, and 10.10. Her breach of contract claim on this basis may proceed.[7]

---

[6] The Court notes that the Handbook does not mandate that there be an investigation, or describe procedures applicable to a decision not to investigate. Here, the parties dispute whether there was an investigation.

[7] While the Court is not considering the extraneous documents submitted by Defendant with its motion, the Court notes that these documents also do not indicate the disposition of Plaintiff's complaint.

### 5. Sanction Guidelines

Although not discussed by Defendant as a possible basis for a breach of contract claim, Plaintiff also alleges that her expulsion was "excessive" and not in accordance with the "Standard Sanctioning Guidelines" found in the Handbook. (*See* Dkt. No. 1, ¶¶ 81, 151 (alleging that the expulsion decision "does not follow Defendant's own guideline on the punishment"); Dkt. No. 54, at 4–6 (arguing that the "Standard Sanctioning Guidelines illustrate just how out of proportion Plaintiff's expulsion was to the school's findings")). The Standard Sanctioning Guidelines "have been adopted by Syracuse University to respond to substance abuse-related and other serious violations of the Code of Student Conduct." (*See* Dkt. No. 10-5, at 25–28). Incidents to which the standard sanctions do not apply "will be handled on a case-by-case basis in light of all the circumstances." (*Id.* at 25).

The Court finds that Plaintiff has not identified a specific contractual promise that Defendant breached. *Nungesser*, 169 F. Supp. 3d at 370. Plaintiff acknowledges in her opposition that the Handbook's Standard Sanctioning Guidelines "do not address the sort of allegations that were made against Plaintiff." (Dkt. No. 54, at 6). Accordingly, the Guidelines do not contain a specific contractual promise applicable to Plaintiff's expulsion sanction and any breach of contract claim based on the Guidelines is dismissed.

### C. Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff alleges that Defendant breached the implied duty of good faith and fair dealing implicit in the parties' contract. (Dkt. No. 1, ¶¶ 92–109 (Count II)). Plaintiff alleges that Defendant had "a duty to fairly, justly, and impartially adjudicate this matter and follow [its] policies and procedures" but "failed to provide Plaintiff with the fair adjudicative process as outlined" and "purposefully impeded Plaintiff's ability to continue her academic success." (*Id.* ¶¶ 93, 108). Defendant argues that the claim should be dismissed because "New York law does

not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled." (Dkt. No. 10-1, at 22 (quoting *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 482 (S.D.N.Y. 2015)).

New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Nungesser*, 169 F. Supp. 3d at 372–73 (quoting *Yu*, 97 F. Supp. 3d at 482). A "breach of the implied covenant of good faith and fair dealing claim that is duplicative of a breach of contract claim must be dismissed." *Id.* (quoting *Yu*, 97 F. Supp. 3d at 482); *see also Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) ("[W]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant.").

Here, Plaintiff's breach of contract and breach of the implied duty of good faith and fair dealing claims rest on the same allegations. Plaintiff's allegations in both contexts concern the allegedly unfair and unthorough investigations conducted by Defendant before imposing disciplinary sanctions on Plaintiff. (*See* Dkt. No. 1, ¶¶ 75–109). Plaintiff's claim for breach of the implied duty of good faith and fair dealing must therefore be dismissed. *See Doe v. Syracuse Univ. ("Doe 2019")*, No. 18-cv-377, 2019 WL 2021026, at *12, 2019 U.S. Dist. LEXIS 77580, at *34–35 (N.D.N.Y. May 8, 2019) (dismissing implied covenant of good faith and fair dealing claim when a "close examination of the facts alleged . . . reveals that both claims, at essence, arise from the same operative facts and seek the same damages"); *Nungesser*, 169 F. Supp. 3d at 373 (dismissing implied covenant of good faith and fair dealing claim when the plaintiff "failed to plead any facts, separate from the facts with which he attempts to state a claim for breach of contract in support of his claim for a breach of the covenant of good faith and fair dealing"); *see*

18

*also Keefe v. New York Law Sch.*, 71 A.D.3d 569, 570 (1st Dep't 2010) (noting that only a

school's "specific promises" "can establish the existence of an implied contract," and "[a]bsent

the existence of a contract, a claim alleging breach of the implied covenant of good faith and fair

dealing is legally unavailing").

### D.      Breach of Contractually Protected First Amendment Rights

Plaintiff alleges that Defendant violated her "contractually protected First Amendment

rights" by punishing her for expressing her "concern about others['] academic integrity" when

she accused other students of stealing her design ideas. (Dkt. No. 1, ¶¶ 110–23 (Count III)).

Defendant argues that Plaintiff's claim must be dismissed because she fails to, and cannot, allege

that the University's "written policies guarantee students speech rights co-extensive with the

First Amendment." (Dkt. No. 10-1, at 24).[8]

Part 1 of the Statement of Student Rights and Responsibilities found in the Handbook

states that "[s]tudents have the right to express themselves freely on any subject provided they do

so in a manner that does not violate the Code of Student Conduct." (Dkt. No. 10-5, at 5; *see also*

Dkt. No. 1, ¶ 115 (alleging the same)). At the June 22, 2015 informal resolution meeting relating

to Plaintiff's allegations of plagiarism, Plaintiff accepted responsibility for violating four

provisions of the Code of Student Conduct. (Dkt. No. 10-9, at 2–3 ("[Y]ou indicated your

understanding of how accusing students of academic dishonesty was a violation of the

University's Academic Integrity Policy."); *see also* Dkt. No. 1, ¶ 112). Plaintiff therefore does

not have a viable breach of contract claim based on Part 1 of the Statement, as she only had the

contractual right to "express [herself] freely" if the speech did not otherwise violate the Code of

---

[8] The Court does not read Plaintiff's complaint as asserting a claim for violation of her First Amendment rights under
Section 1983. To the extent the complaint asserts such a claim, the claim fails for lack of state action. *See infra* Section
IV.G.

Student Conduct. To the extent Plaintiff seeks "a reexamination of the result or penalty of [her]

disciplinary hearing because [Defendant] acted arbitrarily," her "remedy to challenge the

disciplinary determination on this basis is through a New York Civil Practice Law and Rules

Article 78 proceeding, not a breach of contract claim." *Prasad v. Cornell Univ.*, No. 15-cv-322,

2016 WL 3212079, at *20 & nn.33–34, 2016 U.S. Dist. LEXIS 161297, at *64–67 & nn.33–34

(N.D.N.Y. Feb. 24, 2016).

Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's claim for

violation of her contractually protected First Amendment rights.

### E.     Negligence

Plaintiff asserts a negligence claim against Defendant, alleging that Defendant owed her

duties of care "in investigating and adjudicating the charges against her" and "to protect her from

defamation, harassment, assault, [and] battery by Defendant's own employees," and that

Defendant breached those duties. (Dkt. No. 1, ¶¶ 124–32 (Count IV)). Defendant argues that

Plaintiff's negligence claim must be dismissed because Plaintiff "fails to allege facts plausibly

supporting a legal duty separate from that arising under the alleged contract between her and the

University." (Dkt. No. 10-1, at 27–28).

To establish a prima facie case of negligence under New York law, a plaintiff must show:

"(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that

duty; and (3) the plaintiff suffered damage as a proximate result." *Noakes v. Syracuse Univ.*, 369

F. Supp. 3d 397, 420 (N.D.N.Y. 2019) (quoting *Williams v. Utica Coll. of Syracuse Univ.*, 453

F.3d 112, 116 (2d Cir. 2006)). Here, Plaintiff has not cited to any New York law recognizing a

duty of care owed by a private university stemming from its disciplinary proceedings. There is

"no cause of action in the State of New York sounding in negligent prosecution or investigation."

*Doe v. Syracuse University ("Doe 2018")*, 341 F. Supp. 3d 125, 142 (N.D.N.Y. 2018) (citation

omitted); *see Noakes*, 369 F. Supp. 3d at 421 (citing *Prasad*, 2016 WL 3212079, at *23, 2016

U.S. Dist. LEXIS 161297, at *74); *Yu*, 97 F. Supp. 3d at 484.

Furthermore, Plaintiff's negligence allegations are similar to those underpinning her

breach of contract claims. (*See, e.g.*, Dkt. No. 1, ¶¶ 130(b) (alleging that Defendant failed to

"train its employees, agents or representatives in the proper method to thoroughly investigate and

adjudicate, without bias, reports of sexual misconduct"), 130(c) (alleging that Defendant failed to

properly train regarding "the investigation, adjudication, and appeal from adjudication of

complaints of sexual misconduct")). However, "[s]imply alleging a duty of care does not

transform a breach of contract [claim] into a tort claim." *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d

336, 362 (N.D.N.Y. 2014) (dismissing negligence claim where "facts alleged in support of the

plaintiff's negligence claim are similar to those alleged in connection with his contract claim—

that the University breached its duty (contract) with plaintiff to follow its own rules regarding

student discipline"); *see also Prasad*, 2016 WL 3212079, at *23, 2016 U.S. Dist. LEXIS 161297,

at *73–74 ("[C]ourts routinely dismiss tort claims where they are duplicative of a simultaneously

pled breach of contract claim.").

In sum, because Plaintiff has failed to establish that Defendant owed her a legal duty of

care separate from any contractual duty it owed her, the Court grants Defendant's motion to

dismiss her negligence claim.

### F.    Violation of Fundamental Fairness

Plaintiff alleges a claim for "violation of fundamental fairness." (Dkt. No. 1, ¶¶ 133–38

(Count V)). Plaintiff alleges that Defendant owed her a duty to "provide her with a process that

was fundamentally fair to her" and "failed to provide a fair process." (*See id.*). Defendant argues

that this claim should be dismissed because "there is no such cause of action in New York" and

courts have rejected similar allegations in the context of breach of contract claims. (Dkt. No. 10-

1, at 28–29). The Court agrees with Defendant. There is no cause of action for "violation of fundamental fairness" under New York law. Furthermore, "[p]rovisions that students will be treated in a 'fundamentally fair' manner, or in a manner that is consistent with fundamental 'student rights,' are the sorts of non-actionable statements of general policy that courts applying New York law have held cannot support a breach of contract claim." *Doe 2018*, 341 F. Supp. 3d at 141. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's "violation of fundamental fairness" cause of action.

### G.    Fourteenth Amendment Due Process

Plaintiff alleges that Defendant violated her procedural due process rights under the Fourteenth Amendment in the course of imposing disciplinary probation on June 22, 2015 and in expelling Plaintiff from the University in the fall of 2015. (Dkt. No. 1, ¶¶ 139–53 (Count VI)). Defendant argues that Plaintiff's constitutional claim fails because the University is not a state actor "subject to constitutional claims brought pursuant to 42 U.S.C. § 1983." (Dkt. No. 10-1, at 23–24).

It is well-settled that a plaintiff alleging a violation of her constitutional rights under Section 1983 must show state action. *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012); *see also* 42 U.S.C. § 1983 (imposing liability on persons who act "under color of any [state] statute, ordinance, regulation, custom, or usage"). While private parties generally are not state actors, their conduct can be attributed to the state for Section 1983 purposes if "(1) the State compelled the conduct [the "compulsion test"], (2) there is a sufficiently close nexus between the State and the private conduct [the "joint action test" or "close nexus test"], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the state [the "public function test"]." *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009) (summary order) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257

(2d Cir. 2008)). The "fundamental question" for each test is whether the private party's conduct is "fairly attributable" to the state such that it bears responsibility. *Fabrikant*, 691 F.3d at 207.

Plaintiff appears to allege that Defendant became a state actor for purposes of the Fourteenth Amendment because the University's "enactment and execution" of the policy found in New York Education Law § 6444, commonly known as the "Enough is Enough" Law, indicates that the University "was acting under the color of a State statute." (Dkt. No. 1, ¶¶ 148, 152). However, a private entity does not become a state actor "merely on the basis of 'the private entity's creation, funding, licensing, or regulation by the government.'" *Fabrikant*, 691 F.3d at 207 (citations omitted); *cf. Doe v. Syracuse Univ.*, 440 F. Supp. 3d 158, 182 (N.D.N.Y. 2020) (rejecting plaintiff's argument that Syracuse University became a state actor, for the purposes of New York's Due Process Clause, through the University's implementation of the Enough is Enough law). Plaintiff further alleges that Defendant's conduct "is attributable to the State, because the State, upon information and belief, encouraged the University's disciplinary action taken against Plaintiff regardless of its appr[o]priateness." (Dkt. No. 1, ¶ 152). However, she fails to plead facts from which it could be plausibly inferred that there was any state involvement in the University's disciplinary action. (*Id.*).

Because Plaintiff has failed to plead state action, her Section 1983 claim for violation of her Fourteenth Amendment rights must be dismissed, and the Court grants this portion of Defendant's motion to dismiss.

### H.     Title IX Harassment

Title IX provides, with certain exceptions not relevant here: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Sexual harassment is a "form of discrimination

prohibited by Title IX." *Posso v. Niagara Univ.*, 518 F. Supp. 3d 688, 696 (W.D.N.Y. 2021) (citing *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 649–50 (1999)). To state a "student-on-student sexual harassment Title IX claim," a plaintiff must allege that "(1) a federally funded educational institution (2) was deliberately indifferent to and (3) had actual knowledge of (4) sexual harassment that was so severe, pervasive, and objectively offensive that it could be said to have deprived the plaintiff of access to the educational opportunities or benefits." *Roskin-Frazee v. Columbia Univ.*, No. 17-cv-2032, 2018 WL 6523721, at *4, 2018 U.S. Dist. LEXIS 28937, at *11 (S.D.N.Y. Nov. 26, 2018) (citing *Davis*, 526 U.S. at 650); *Posso*, 518 F. Supp. 3d at 696 (same). A school has actual knowledge of harassment when a school official with "authority to address the alleged discrimination and to institute corrective measures" has actual knowledge of the discrimination. *Papelino*, 633 F.3d at 89. A school is deliberately indifferent to sexual harassment when its response is "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648–49.

Although not addressed by Defendant, the Court finds that Plaintiff has plausibly alleged a Title IX harassment claim. Plaintiff plausibly alleges that, no later than June 25, 2015, the University had actual knowledge of severe and pervasive harassment by virtue of her Title IX complaint against Student X for sexual assault. (*See* Dkt. No. 1, ¶¶ 57 (alleging that she "filed a complaint" with the University's Title IX officer "that her ex-boyfriend had sexually assaulted her" on June 25, 2015), 68 (alleging that Officer Patsos "insulted Plaintiff by saying that her lack of English proficiency caused misunderstanding of 'consent' during a consen[sual] sexual intercourse"); *see also* Dkt. No. 54, at 9 (alleging that Student X "raped her")). A "single event" of harassment can satisfy the severe and pervasive standard if it is "sufficiently threatening or repulsive, such as a sexual assault." *T.Z. v. City of New York*, 634 F. Supp. 2d 263, 270–71

(E.D.N.Y. 2009) (collecting cases); *see also Carabello v. New York City Dep't of Educ.*, 928 F. Supp. 2d 627, 643 (E.D.N.Y. 2013). Finally, Plaintiff alleges that the University "completely and willfully ignored the Plaintiff's report on Student X's sexual assault" and otherwise failed to investigate Plaintiff's the alleged assault. (Dkt. No. 1, ¶¶ 19, 58–59, 65). A complete failure to respond to a complaint of harassment can constitute deliberate indifference. *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d Cir. 2012). Therefore, at this early stage, the Court finds that Plaintiff has plausibly stated a Title IX harassment claim which may proceed.

## I. Injunctive and Declaratory Relief and Punitive Damages

Defendant moves to dismiss Plaintiff's claims for injunctive relief and declaratory judgment (Count VII) and punitive damages (Count VIII), arguing that these claims "do not constitute independent causes of action, as they are simply forms of relief." (Dkt. No. 10-1, at 29 (citing *Prasad*, 2016 WL 3212079, at *24, 2016 U.S. Dist. LEXIS 161297, at *76–77)). The Court agrees that injunctive relief, declaratory judgments, and punitive damages are not independent causes of action and therefore will strike Plaintiff's Counts VII and VIII as claims. *See Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 688 (S.D.N.Y. 2021) (noting that it is well-settled that a request for injunctive relief "is not an independent cause of action" but rather a "remedy"); *Prasad*, 2016 WL 3212079, at *24, 2016 U.S. Dist. LEXIS 161297, at *76–77 (noting that a claim for declaratory judgment is not an independent cause of action); *Doe v. Indyke*, 457 F. Supp. 3d 278, 284 (S.D.N.Y. 2020) (noting that punitive damages "are a form of damages, not an independent cause of action" (citation omitted)).[9]

---

[9] The Court notes that Plaintiff's prayer for relief seeks injunctive and declaratory relief and punitive damages. Defendant has not addressed those requests for relief, which remain.

## V.     CONCLUSION[10]

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss or, in the alternative, for summary judgment (Dkt. No. 10) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 10) Plaintiff's breach of contract claim is **GRANTED** as to the failure to investigate Plaintiff's Title IX complaint, the failure to designate a Review Board, and the failure to follow the Standard Sanction Guidelines, but **DENIED** as to the failure to invite Plaintiff to participate in a pre-hearing meeting and the failure to resolve Plaintiff's Title IX complaint; and it is further

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 10) is **GRANTED** as to Plaintiff's claims for breach of the covenant of good faith and fair dealing (Count II), breach of Plaintiff's contractually protected First Amendment rights (Count III), negligence (Count IV), violation of fundamental fairness (Count V), and violation of Plaintiff's Fourteenth Amendment Due Process rights (Count VI), and those causes of action are **DISMISSED**; and it is further

**ORDERED** that Plaintiff's cause of action for harassment under Title IX may proceed; and it is further

**ORDERED** that Plaintiff's causes of action for injunctive relief and declaratory judgment (Count VII) and punitive damages (Count VIII) are stricken as causes of action; and it is further

---

[10] As Plaintiff has not sought leave to amend the complaint, or provided facts indicating that there is any viable basis for amendment, the Court does not address that issue.

**ORDERED** that the Clerk of the Court is directed to serve this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: <u>March 16, 2022</u>
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge